UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL GUTTENTAG and STEVEN REEVES, on behalf of themselves and all others similarly situated,

                Plaintiffs,

-against-

RUBY TUESDAY, INC., DOE DEFENDANTS 1-10,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/2/14

12 Civ. 3041 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    On April 17, 2012, Plaintiffs Michael Guttentag and Steven Reeves filed this action, on behalf of themselves and all others similarly situated, alleging violations of, *inter alia*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law ("NYLL"), and the Florida Minimum Wage Act. Compl., ECF No. 1. Plaintiffs claim that Defendant Ruby Tuesday, Inc., which owns and operates approximately 750 Ruby Tuesday restaurants throughout the United States, failed to pay its "tipped employees" (*i.e.*, servers, bartenders, and buspersons) for off-the-clock work. *Id.* ¶¶ 1-4, 20. On June 11, 2013, the Honorable Harold Baer granted Plaintiffs' motion for conditional collective action certification. ECF No. 30. Beginning on November 7, 2013, Plaintiffs distributed notice of the FLSA collective action. Pl. Mem. 7, ECF No. 106. In total, 4,170 people opted in to the action. *Id.* at 10. On July 10, 2014, the case was reassigned to this Court. On July 28, 2014, the parties informed the Court that they had reached a settlement. ECF No. 103. Plaintiffs now move, without opposition, for: (1) approval of the proposed settlement; (2) approval of the proposed plan of allocation of settlement proceeds; (3) approval of service awards to seven Plaintiffs; and (4) an award of attorneys' fees and expenses to Plaintiffs' counsel. For the reasons stated below, the motion is GRANTED.

## DISCUSSION

I. The Proposed Settlement

Before approving a FLSA settlement, a district court "must scrutinize the settlement agreement to determine that the settlement is fair and reasonable." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).[1] In making this assessment, the court should consider the totality of the circumstances, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Id.* (internal quotation marks and citations omitted).

"Because, under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (internal quotation marks and citations omitted). Thus, the standard for approval of a FLSA collective action settlement is lower than that of a Rule 23 class action settlement. *Id.* "Generally, courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *Aguilera v. Cookie Panache ex rel. Between the Bread, Ltd.*, 13 Civ. 6071, 2014 WL 2115143, at *1 (S.D.N.Y. May 20, 2014) (brackets, internal quotation marks, and citation omitted).

---

[1] *But see Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 364-65 (S.D.N.Y. 2013) (noting that "it is not clear that judicial approval of an FLSA settlement is legally required"); *Picerni v. Bilingual Seit & Preschool Inc.*, 925 F. Supp. 2d 368, 372 (E.D.N.Y. 2013) (concluding that "the procedure of a court requiring approval before it permits parties to voluntarily dismiss an FLSA action is incorrect").

Here, the Court finds the proposed settlement to be fair and reasonable. First, there is no question that the parties—each represented by counsel experienced in wage and hour litigation, Pl. Mem. 15—reached the settlement as a result of contested litigation and arm's-length negotiations. Among other things, Defendants: (1) denied any wrongdoing in their answer to the complaint, ECF No. 11; (2) opposed Plaintiffs' motion for conditional collective action certification, ECF Nos. 27, 42; and (3) sought reconsideration of Judge Baer's order granting conditional collective action certification, ECF No. 32. The parties also participated in two mediation sessions—on September 6, 2013 and February 18, 2014—and engaged in subsequent telephone conferences and e-mail exchanges with the mediator. Pl. Mem. 11.

Second, according to Plaintiffs, the proposed settlement would enable those who opted in to the collective action (the "opt-ins") to recover nearly 90% of their estimated actual damages. *Id.* at 1. Specifically, Plaintiffs estimate actual damages to be $1,873,377.02. *Id.* at 11. The proposed settlement would distribute $1,675,000.00 among the opt-ins.

Third, the proposed settlement would allow the parties to avoid the costs associated with continued litigation. Beyond establishing claims and defenses at trial, further litigation would require extensive discovery and entail motion practice (*e.g.*, a likely motion by Defendants for decertification of the collective action). *Id.* at 17-18.

Fourth, the proposed settlement would provide certainty whereas continued litigation would carry significant risks. As noted, in the absence of settlement, Defendants would likely move for decertification of the collective action. If Defendants were to prevail on such a motion, Plaintiffs would seek to bring "district-by-district or even restaurant-by-restaurant actions," which would require Defendants "to defend dozens of cases around the country." *Id.* Moreover, even if Plaintiffs were to prevail on a decertification motion, they would still face serious risks in

establishing liability and damages at trial, because these issues would turn on a jury's credibility determinations.

Finally, there is no evidence of fraud or collusion between the parties. The opt-ins' favorable response to the proposed settlement, *id.* at 12-14, supports this finding. Notably, on August 13, 2014, the claims administrator, on behalf of Plaintiffs' counsel: (1) notified each opt-in of his or her estimated individual award under the settlement; (2) advised each opt-in that he or she could opt out of the collective action if dissatisfied with the award; and (3) provided each opt-in with a copy of the Settlement Agreement. *Id.* at 13-14. To date, none of the opt-ins has opted out. *Id.* at 14.

In sum, having considered the *Wolinsky* factors and the totality of the circumstances, the Court finds the proposed settlement to be fair and reasonable and, therefore, approves the proposed settlement.[2]

II.   Service Awards

Plaintiffs also seek approval of service awards to "seven plaintiffs who took leadership roles in the litigation and contributed to the success of the case as a whole." *Id.* at 38. Service awards in FLSA collective actions, as in Rule 23 class actions, "serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Matheson v. T-Bone Rest., LLC*, 09 Civ. 4214, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011). Here, Plaintiffs recommend the following service awards, to be paid from the settlement fund: (1) $14,500 for Michael Guttentag; (2) $14,500 for Steven Reeves; (3) $5,000 for Sera Ciufalo; (4) $5,000 for Shannon Clary; (5) $5,000 for Ryan Friedman; (6) $5,000 for Mark

---

[2] By approving the proposed settlement, the Court also approves the proposed plan of allocation of settlement proceeds as described in the Settlement Agreement.

Porter; and (7) $1,000 for Benjamin Kimball. Pl. Mem. 39-41. In light of these individuals' contributions to the litigation, *see id.*, and the reasonable amount of the proposed awards, the Court approves the service awards.

III. <u>Attorneys' Fees and Expenses</u>

Finally, Plaintiffs request an award of attorneys' fees in the amount of $1,000,000 and expenses in the amount of $275,000, to be paid from the settlement fund. Under the FLSA, a prevailing plaintiff is entitled to reasonable attorneys' fees and expenses. 29 U.S.C. § 216(b). Awarding attorneys' fees in this context is meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). Indeed, "[b]ut for the separate provision of legal fees, many violations of the [FLSA] would continue unabated and uncorrected." *Id.*

Where, as here, the settlement establishes a common fund, a district court "may award attorneys' fees . . . under either the lodestar method or the percentage of the fund method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (internal quotation marks and citation omitted). However, "the trend in [the Second] Circuit is toward the percentage method." *Id.* Regardless, in assessing the reasonableness of a fee award in a common fund case, the court should consider: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (brackets, internal quotation marks, and citation omitted).

5

In this case, the Court finds a fee award of $1,000,000 (*i.e.*, one-third of the settlement fund) to be reasonable, as all of the *Goldberger* factors weigh in favor of the requested award. Moreover, awarding attorneys' fees in the amount of one-third of the settlement fund is "consistent with the norms of" similar litigation in the Second Circuit. *Beckman*, 293 F.R.D. at 477, 482 (awarding one-third of a $4,900,000 fund in a FLSA and multi-state wage and hour case); *see also, e.g.*, *Tiro v. Pub. House Invs., LLC*, 11 Civ. 7679, 2013 WL 4830949, at *12, *16 (S.D.N.Y. Sept. 10, 2013) (awarding one-third of a $1,300,000 fund in a FLSA and NYLL case); *Aponte v. Comprehensive Health Mgmt., Inc.*, 10 Civ. 4825, 2013 WL 1364147, at *6 (S.D.N.Y. Apr. 2, 2013) (awarding one-third of a $6,500,000 fund in a FLSA and NYLL case). In addition, the fee award sought represents a 1.15 multiplier of Plaintiffs' counsel's lodestar of $866,770.75, Pl. Mem. 25, which further demonstrates its reasonableness, *see, e.g.*, *Beckman*, 293 F.R.D. at 481-82 (noting that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers," and finding a 6.3 multiplier, which equaled one-third of the settlement fund, to be reasonable).

The Court likewise finds an award of $275,000 in expenses to be reasonable. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal quotation marks and citation omitted). Here, Plaintiffs' counsel's expenses—which include the costs of notice, depositions, mediation, and anticipated settlement claims administration, Pl. Mem. 37—are reasonable and "incidental and necessary to the representation." Accordingly, they should be reimbursed.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' unopposed motion for:

1. Approval of the proposed settlement;

2. Approval of the proposed plan of allocation of settlement proceeds;

3. Approval of service awards to Guttentag, Reeves, Ciufalo, Clary, Friedman, Porter, and Kimball in the recommended amounts, to be paid from the settlement fund; and

4. An award of attorneys' fees and expenses to Plaintiffs' counsel in the amounts of $1,000,000 and $275,000, respectively, to be paid from the settlement fund.

The Court shall retain jurisdiction over the Settlement Agreement for the purposes of enforcement and overseeing the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

The Clerk of Court is directed to terminate the motion at ECF No. 105 and to close the case.

SO ORDERED.

Dated: October 2, 2014
       New York, New York

_____
ANALISA TORRES
United States District Judge